DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

MARCH TERM, 1880.

---

MARCUS MEYER, PLAINTIFF IN ERROR, v. THE STATE, DEFENDANT IN ERROR.

A house in which unlawful sales of liquor are habitually made, is an indictable nuisance, although there is a city ordinance prescribing penalties for such sales, as such traffic is not only a breach of the city law, but is also forbidden by the state law.

The plaintiff in error was convicted in the Essex County General Quarter Sessions of the Peace, of keeping a disorderly house in the city of Newark, the alleged disorder consisting in the habitual selling of ale, beer, &c., on Sundays. Upon a writ of error, the cause was brought before the Supreme Court, and the judgment below affirmed. 12 *Vroom* 6. From this judgment, an appeal is now had to this court.

For the plaintiff in error, *S. Kalisch* and *J. D. Bedle.*

Indictment found September Term, 1878, for keeping disorderly house in the city of Newark.

The time alleged is May 12th, 1878, and between that day and finding indictment.

The offence does not exceed *three sales on a certain Sunday* —May 12th, 1878; that is, there can be nothing more claimed from the proof than that.

*The subsequent purchases are not shown to have been within the time laid in the indictment.* There is no *question of disorder; in fact,* it is a question of SIMPLE sale only.

*The indictment is general.*

There is an ordinance in the city of Newark, page 8 of the book, against sale of liquor on Sunday, *under a penalty of $10—or be imprisoned four days.*

The Supreme Court holds, in substance, that these acts or offences *denounced* by the city ordinance are in violation of the *statutory policy of the state,* and hence defendant is guilty.

I. The ground upon which the court below places the case: The opinion does not proceed on the ground of a violation of the city ordinance, but of the statutory policy of the state.

The act immediately in question is in *Rev., p.* 493, approved March 26th, 1874: That none of the provisions of Section 37 of the act of 1846, (sale without license,) or of the act (supplement) of March 8th, 1848, or of the act (supplement) of February 20th, 1849, *" shall hereafter apply to offences committed in any of the incorporated cities of this state,* the *ordinances of which provide* for the punishment of the unlicensed sale of spirituous liquors, *and for the punishment of the sale of spirituous, malt, vinous, fermented or intoxicating liquors on Sunday."*

The laws referred to in the above are in *Nix. Dig., p.* 400, § 37; against unlicensed sale, also *Nix. Dig., p.* 402, §§ 51, 52. These two latter are involved in this case.

In the Revision these provisions now constitute Sections 60 and 61 of the crimes act, pages 237–8. These sections are a consolidation, Section 61 being a consolidation of the two supplements. The crimes act was approved March 27th, 1874. The Revision took effect January 1st, 1875. *The supplement is not a part of the Revision of* 1874, *p.* 93. The

Revision does not disturb the act of 1874. The Revision repealed Sections 37 and 40 of the inn and tavern act, and the supplements of 1848–9, page 1399, paragraphs 607, 608, 609.

The effect of this repealer was not to disturb the act of 1874. See opinion, Beasley, C. J., *State* v. *Anderson*, 11 *Vroom* 224.

That leaves the question as to the meaning of the act of March 26th, 1874.

The Chief Justice runs a distinction between its *general prohibition* and the *punishment*. This seems to me to be anomalous in penal construction.

It is a question of the *force* of language. It is true that previous to 1874 *these Sunday acts were general;* but at that time the legislature adopted a different policy, as to incorporated cities, and abridged the acts accordingly, wherever cities chose to control the question.

· It is not unusual, as a legislative policy, to leave offences as to sale of liquor to municipal control. 2 *Bish. Crim. L.*, § 991, and notes.

It used to be so before our statute of 1848.

The legislature might well think it wise to leave such questions as these to the judgment of cities, according to the character and habits of the population.

*There is no state law in force in Newark,* because of the ordinance, and the policy of the state is to leave the question entirely to municipal control.

. The conclusion of the court below is without precedent, and artificial. How can there be such a thing as an indictment based upon the statutory policy of a state? A contract may not be *enforced,* if against the policy of a statute; but to indict a man for that reason is novel.

II. Selling liquor on Sunday is not, in itself, a common-law offence.

Selling liquor without license is not indictable *per se,* and is *not immoral. State* v. *Anderson,* 11 *Vroom* 228.

*A tippling-house* is not indictable at common law, in itself—

there must be disorder to make it indictable.    2 *Bish. Crim. L.*, §§ 252, 996 ; *Rex* v. *Faulkner*, 2 *Keble* 506 ; *S. C.*, 1 *Saund.* 248.

An *ale*-house, at common law, is lawful, if not disorderly. *Rex* v. ——, 2 *Show.* 488.

The selling of liquor, *without disorder*, on a week day, is no more indictable at common law, in itself, than cigars, tobacco, or any other merchandise.

There is no distinction in the common law in respect to the validity of contracts made on Sunday or a week day.    *Drury* v. *De Fontaine*, 1 *Taunt.* 131 ; *Adams* v. *Gray*, 19 *Vt.* 364, Redfield, J.    There is nothing in the day apart from the prohibition of a statute which makes any sale or compact on Sunday void.

In *Rex* v. *Brotherton, Strange* 702, judgment was rendered for defendant on demurrer upon an indictment for exercising the trade of a butcher on a Sunday, because the charge was not laid *contra formam statuti.*

This was as late at 12 *Geo. I.*

See same case, 2 *Sess. Cas.* 224.

The whole range of English statutes as to Sunday, or Lord's day, shows that work, sports and pastimes on Sunday were not punishable without a statute—were not punishable simply because on a Sunday.    Fairs and markets were formerly held on Sunday.    See argument and references, Serg. Best, 1 *Taunt.* 132.

See the various acts prohibiting certain things on Sunday. 3 *Burn's Just.* 132.

Dancing, archery, and sports, allowed until prohibited by statute.    Serving process, also.    See also statute *Hawk. P. C., ch. VI.*, §§ 1, 2, 3.    This chapter is headed, " Of offences by *statute* against religion in general."

In *Crepps* v. *Durden, Cowp.* 646, Lord Mansfield says there is no penalty at common law against a baker exercising his calling on Sunday.    There was a statute.

In 1 *East P. C.* 5, it says: " The profanation of Lord's day, or Sunday, is, by a variety of statutes, punishable in particular

instances, by summary process before magistrates, but it is also *said to be* indictable at common law, and there is a precedent of such an indictment against a butcher, in which he is charged to be a common Sabbath-breaker and profaner of the Lord's day, and for having, within certain times mentioned, kept public and open shop, and exposed meat to sale to divers persons unknown," and referring to *Cro. C. C.* 155; 1 *Hawk., ch. VI.*, §§ 1, 2, 3.

This same precedent is also found in 2 *Chit. Crim. L.* See *note c*, in which it is stated *that the precedent is omitted in 8th ed. Cro. C. C.* There is a note, also, in *6th ed. Cro. C. C.* 488, which refers to Rex *v.* Brotherton and Crepps *v.* Durden, and, as stated in the eighth edition, the precedent is discarded. It could not be otherwise, after Rex *v.* Brotherton decided. The notion of such an indictment was exploded by Rex *v.* Brotherton.

At the common law, then, I think it may be safely averred that it is not *immoral* or *indictable* to sell liquor or any merchandise on Sunday. Wherever an indictment has been maintained at common law for habitual acts, the element of *immorality* or *disorder* has been essential, as, for instance, gaming or bawdy-houses, by reason of their pernicious public tendencies.

There are English acts prohibiting the keeping open of public houses, victualing and ale-houses, for the sale of liquor during certain hours on Sunday, particularly during the hours of divine service. *Reg.* v. *Knapp*, 2 *El. & Bl.* 447; *Reg.* v. *Whitely*, 3 *H. & N.* 143; see other cases, *Fish. Dig.* 8266, § 6. A canal company could not make a by-law to close the canal on Sunday. *C. & H. Nav. Co.* v. *Pilling*, 14 *M. & W.* 76.

The above-mentioned acts seem to be based upon the idea that, without a prohibition as to certain hours, the law would not be violated.

III. If there were a public *statute* applying to Newark, then the habitual violation of it would not constitute a nuisance, *i. e.*, a disorderly house. The case of *State* v. *Williams*, 1 *Vroom* 103, in Supreme Court, is an invasion of the common

law.   That question has never been settled in this court.   It must be remembered that we are dealing with the mere *fact of sale*, without disorder.   The doctrine, to that extent, is not sustained by the cases 6 *B. Mon.* 21, and 12 *Id.* 2, cited in the leading opinion of Judge Elmer, on this point.   These cases grew out of the conditions and system of slavery, and were decided upon the ground that, although lawful to habitually sell to *white folks*, it was not to negroes, except by permission of the masters.   It would be no nuisance as to the masters, but it was as to slaves.   That is all there is of those cases. Except that in 6 *B. Mon.*, it was held that *the conviction was not good, because the indictment was in the common form, and did not specify slaves.*

*The great principle of the common law* is, that when a statute makes unlawful that which was lawful before, and prescribes the punishment, that remedy must be pursued.   *Faulkner's case*, 1 *Saund.* 249, *note* 3, and cases; also, *Rex* v. *Dickenson, Id.* 135, *notes* 3, 4, and cases.   If no punishment is prescribed, I admit that the common law authorizes an indictment upon a plain statutory prohibition; but if a penalty or other punishment is provided, the remedy must be confined to the act. *Castle's case, Cro. Jac.* 644; *Stephens* v. *Watson*, 1 *Salk.* 45; *Rex* v. *Wright*, 1 *Burr.* 543; *Rex* v. *Robinson*, 2 *Burr.* 803; *Rex* v. *Marriott*, 1 *Show.* 400; *S. C.*, 4 *Mod.* 144.

On this principle Rex *v.* Marriott was decided in King's Bench.   The indictment was for keeping a *common ale-house.* By 5 and 6 *Edw.*, no person could keep an ale-house without license, under imprisonment three days.   Judgment arrested. See also *Rex* v. *Buck*, 1 *Strange* 677, citing " *Rex* v. *James, Trin.*, 1 *Geo.*, where an indictment for keeping an ale-house was quashed because the statute 3 *Car. I., c.* 3, had directed a particular remedy."   See *King* v. *Joyce*, 2 *Show.* 468, for the case.

If the common law is carefully examined, it will be found that there is no precedent or authority for any indictment based upon the frequent violation of a statute creating a new offence; also, that a house cannot become a nuisance without

the commission of such acts, whether indictable or not, as have an evil tendency in themselves to subvert the public morals or disturb the public peace. A house so kept may be indictable, whether the particular acts are punishable or not. But without such tendencies, I am unable to find any authority to indict under the common law. See *Hall* v. *State*, 4 *Harring*. 132.

Previous to the case of State *v.* Williams (1862), the principle was unheard of in New Jersey. Besides, the first act was in 1848, against the sale of liquor on Sunday, by inn keepers, and the act of 1849 was passed because, among other things, it was uncertain whether the first act did anything more than regulate inn keepers, leaving the unlicensed at liberty to sell on Sunday. (See the two original acts.)

IV. But if this court shall conclude to follow the case of State *v.* Williams, then it should not be extended to the habitual violation of a city ordinance, or of the vice and immorality act.

(a) The city ordinance. It is a mere matter of *local police*. The Supreme Court were evidently unwilling to put the decision upon that ground, and said that the question was "unenlightened by precedents." I refer to *Hale* v. *State*, 4 *Harring*. 145; *Commonwealth* v. *Naylor*, 10 *Casey* 86, to show that a nuisance does not arise out of habitual violation of *the vice and immorality acts*. The mere fact that such a thing is unheard of in the common law, through centuries, is sufficient to induce the courts to leave that matter for legislative action. The principle to which I have referred in Point 3, ought to protect the citizen at least to this extent. Prosecutions on ordinances are not criminal. Violations thereof are in the nature of torts, or, at most, *quasi* criminal, and proceedings to enforce these ordinances are, by suits or summary proceedings before local magistrates, mere matters of small police. *Dillon on Mun. Corp.*, § 344 and note, 346–347 and notes; *Kip* v. *Paterson*, 2 *Dutcher* 298; *Keeler* v. *Milledge*, 4 *Zab.* 142.

To take offences made such only by the ordinances and by reason of their aggregation, to constitute a nuisance, requires

a long stretch of judicial authority; certainly the interdicted offences should be at least contrary to a general public law.

(*b*) The vice and immorality acts. Much already said applies to them. These acts create offences which have a distinguishing character, as punishable by summary proceedings, which are well known as such to the law, (*In re Kerrigan* 344,) and were always looked upon *as exclusive in their penalties and the mode of enforcement.*    '

They have always received a very strict construction, and been confined to the letter of the statute; and so much so that, in Crepps *v.* Durden, it was not permitted to convict a baker for four separate offences on the same day, (Sunday,) for selling bread, under the vice and immorality act, p. 29, c. 2, 7. Lord Mansfield said the act was not intended to include repeated offences on the same day, and states that the killing of ten hares would not multiply the offence or penalty of killing one. *Burn's Just.* 134–5. He says: "There can be but one entire offence on one and the same day."

(*c*) The evidence in this case is confined to Sunday, May 12th, 1878. There was no proof of any offence between that day and the finding of the indictment. Can it be held, under our vice and immorality act, that there was any more than one violation of the ordinance; or, if so, would proof only of sales *on one occasion* be sufficient to constitute a disorderly house, by reason of the violation of that act? Nothing more can be made of the evidence than three sales on one occasion.

V. There can be no conviction of this offence on this indictment, for it should show on its face the habitual violation of ordinances. No other rule of pleading can be fair to defendants. The only precedent for Sabbath-breaking referred to, and which was discarded, sets forth that the defendant was a common Sabbath-breaker; that he kept open shop, and exposed meats for sale. It was all special. The ordinary indictment for disorderly house, in its generalities, ought not to be extended to special and local municipal offences.

When an indictment before a county tribunal is to have special application, by reason of the local ordinances of a city,

Meyer v. State.

which are confined to its limits, it would seem just that the facts should appear upon the face of the indictment.

Most of these remarks apply to the vice and immorality act, and, in addition, refer to 6 *B. Mon.* 23.

These questions have been dealt with in their legal aspects, leaving all considerations of policy to the legislature, where they rightfully belong. The English parliament has, by various statutes, founded upon a liberal policy, regulated these perplexing questions of the observance of the Sabbath to the apparent satisfaction of the people, and in such a way that whatever laws exist are enforced. There is yet to be discovered in our own state wisdom and moral courage enough to meet the difficulty here. It can only be done by legislation, and not by departures in the courts from the landmarks of the common law.

For the defendant in error, *John P. Stockton,* Attorney-General.

I. *A house in which unlawful sales of liquors are habitually made is an indictable nuisance, although there is a city ordinance prescribing the penalties for such sales, as such traffic is not only a breach of the city law, but also of the statutory policy of the state.*

The sale of liquor on the Sabbath day is unlawful, and a practice of so keeping a house to violate the law is to make it disorderly. *State* v. *Williams,* 1 *Vroom* 103.

The habitual practice of a punishable offence, though punishable by pecuniary penalty, may nevertheless constitute a house in which they are practiced a public nuisance, for which an indictment will lie. *Smith* v. *Com.,* 6 *B. Mon.* 23 ; *Wilson* v. *Com.,* 12 *B. Mon.* 4.

A statute authorizing the prosecution of the offence of keeping a disorderly house by a city court, without an indictment found by a grand jury, is illegal on constitutional grounds. *State* v. *Anderson,* 11 *Vroom* 224.

Whatever act openly outrages decency and is injurious to

public morals, is also a misdemeanor at common law, and is indictable as such. *State* v. *Rose*, 32 *Mo.* 560.

Every one, at common law, is entitled to keep a public inn; but if he sells ale, wine or spirits, he comes within the licensing statutes, and may be indicted and fined as guilty of a public nuisance, &c. *Roscoe's Crim. Ev.* (*7th ed.*) 799.

Under the statute (*Rev.* 1866, *tit.* 12, § 137,) which provides for the punishment of any person who shall keep a " disorderly house," it is not necessary to show that the house had acquired the reputation of being a disorderly house. *State* v. *Maxwell*, 33 *Conn.* 259.

A room within twenty miles of the cities of London and Westminster, used for the purpose of music and dancing, and to which the public are admitted on the payment of money, is a disorderly house within 25 *Geo. II., ch.* 36, § 2, unless it has been duly licensed, although no improper or disorderly conduct is allowed in the said room. *Reg.* v. *Wolf & Oblier*, 3 *Cox's Crim. Cas.* 578.

To render persons indictable for keeping a common and disorderly house, &c., it is not necessary that the disorderly conduct should be seen from the exterior of the house. *Reg.* v. *Rice & Wilson*, 10 *Cox's Crim. Cas.* 155.

The same act may constitute an offence both against the state and municipal corporation, and both may punish without violation of any constitutional principle. *Howe* v. *Treasurer of Plainfield*, 8 *Vroom* 146 ; *State* v. *Anderson*, 11 *Vroom* 224. Chief Justice Beasley, in delivering the opinion of the Supreme Court in this case (12 *Vr.* 6), says: " It is certainly indisputable that, by force of law, wherever the municipal ordinance provides a punishment for the sale, on Sunday, of liquors of the kind specified, the punishment denounced against such act by the general law is not applicable. For the act of making *a single forbidden sale* on Sunday, the seller is amenable only under the law of the city ; he is for such an offence dispunishable under the law of the state, and it is upon these premises that the argument of the counsel of the plaintiff in error is construed, his contention being that inasmuch as a single sale

of this kind on a Sunday is but a breach of the city ordinance, repetitions of such selling, *no matter how frequent,* cannot constitute an offence of a higher grade. The contention is, that a series of such prohibited acts is nothing more, nor worse, than multiplied violations of a municipal ordinance, and that such violations, however numerous or continued, cannot become an indictable offence at common law."

" But this argument is founded on an assumption the truth of which cannot be conceded. This traffic in or sales of spirituous liquors on Sunday is obviously something more than the disregard of a local ordinance. It is the general statutory law of the state that prohibits it everywhere, and it is this law that everywhere provides for its punishment."

II. *Repeated violations of a municipal ordinance relating to a subject closely connected with the peace and good order of the city may become so aggravated as to be a nuisance, and as such be indictable at common law.*

The unlawful retailing of intoxicating drinks, or the keeping of tippling-houses, are not included in the category of criminal offences, the punishment of which cannot constitutionally be delegated by the legislature to a municipality as offences cognizable by it under the powers of police. *Howe* v. *Plainfield,* 8 *Vroom* 146.

The habitual sale of liquor on Sunday, in violation of an ordinance, is as much a violation of the law of the land as an habitual violation of a statutory law of similar import.

The violation of the statute is a violation of the law of the state; the violation of an ordinance is the violation of the law of a particular locality. The crime charged is the habitual sale of liquor on Sunday, contrary to law; and the practice of so keeping a house to violate the law is to make it disorderly.

Therefore the habitual selling of liquor on Sunday contrary to law may become so aggravated as to be a nuisance, and, as such, indictable at common law; whether it be sold in violation of the statute, common or municipal law, matters

not, because it is an habitual violation of law, which renders it criminal.

The nature of the crime charged, the act done and the evil intended to be prohibited are substantially and essentially the same in either case, viz., the habitual sale of liquor on Sunday, in violation of law.

The reason that governs the one case necessarily controls the other. *Kuckle* v. *Com.*, 1 *B. Mon.* 361.

The opinion of the court was delivered by

VAN SYCKEL, J.    The defendant was convicted in the Essex County Quarter Sessions, on an indictment charging him with keeping a disorderly house in the city of Newark. The habitual sale of liquor on Sunday, was the only disorder proven on the trial.

The court charged the jury that if the defendant made it a practice to keep his house open on Sunday, for the sale of liquor, it was their duty to convict him. It must therefore be assumed, in this case, that the jury found that the defendant was guilty of habitually selling liquor on Sunday. The judgment of the Supreme Court, sustaining the conviction, has been brought here for review. The case involves the construction of the fiftieth placitum of the act concerning inns and taverns, which provides that certain sections of that act (now incorporated in the crimes act as Sections 60 and 61), making it a penal offence to sell liquor on Sunday, shall not "apply to offences committed in any of the incorporated cities of this state, the ordinances of which provide for the punishment of the unlicensed sale of spirituous liquors, and for the punishment of the sale of spirituous, malt, vinous, fermented, or intoxicating liquors, on Sunday." In the city of Newark, an ordinance is in force forbidding the sale of intoxicating liquors on Sunday, and the insistment is that this superseded the provisions of the state law above referred to. *Rev.*, *p.* 493, *pl.* 50; *Rev.*, *p.* 237, §§ 60, 61.

It is admitted that where the municipal ordinance provides a punisment for selling liquor on Sunday, the seller is punish-

able only under the city law for making a single unlawful
sale. But it is contended that repeated sales are a mere vio-
lation of the local ordinance, that they are not prohibited by
the state law, and that, therefore, however habitual or con-
tinued such sales may be, they can be repressed only by the
local authorities, and do not constitute a disorderly house,
punishable by indictment at common law. This defence
assumes that, in those cities where prohibitive ordinances exist,.
the sale of intoxicating liquors does not contravene the state
law. Such a construction is plainly in conflict both with the
letter and spirit of the general law.

It forbids the unlicensed sale everywhere; it denounces the
penalty which shall fall upon the offender, except in those
localities where a substituted punishment shall be provided.
It is not left to the municipality to determine whether such
selling is to be a punishable offence; the legislature has
declared that it should be, the *quantum* of punishment only
being left to the city ordinance.

The city of Newark could not make the unlicensed sale
lawful, so as to dispense with penal consequences, because
there is the state law reaching out its arm to strike every
offender, unless the city shall otherwise punish him. Upon
the repeal of such ordinance, the penalty of the state law
would at once operate in the city; no legislation would be
needed to revive it. The state law is mandatory, and, before
any locality can escape its sanctions, it makes it a necessity
that some other form of punishment shall be provided.

The Sunday traffic is therefore not merely an infringement
of the statutory policy of the state, but it is the doing of an
act which the state law says shall not be done without being
punished. This interpretation of the law leads to the conclu-
sion that the defendant has been found guilty of habitually
keeping his house open on the Sabbath, for a purpose which
the statute interdicts as unlawful. That this subjected the
house to an indictment as a public nuisance, has been the
unchallenged law of this state since the decision of *State*
v. *Williams*, 1 *Vroom* 102. The doctrine of this case was

reaffirmed in *State.* v. *Hall,* 3 *Vroom* 158, where the Chief Justice observes that those decisions are clearly referable to admitted principles, which hold that houses are indictable as nuisances where practices resting under a statutory interdict are permitted.

It would require a strong array of authorities to overturn a rule which has become so firmly rooted in the administration of the criminal law of the state. The only cases cited by the defence are the English decisions, which hold that where an act of parliament makes unlawful that which was lawful before, and prescribes a penalty for the prohibited act, that remedy must be pursued. These cases are decided upon correct principles, but no adjudged case has been produced which holds that a house may not be abated as a nuisance, where practices forbidden by positive law are persistently carried on. Judgment was arrested in *Rex* v. *Marriott,* 1 *Show.* 400, where the inictment was for keeping an ale-house, because, by 5 and 6 *Edw. VI.,* a certain penalty was provided for keeping an ale-house. The indictment charged the precise act forbidden, not an habitual violation of the statute. It is contended that, to make the offence indictable, the acts complained of must have a tendency to subvert public morals. Acts which the experience of mankind has proved to be so inimical to the public welfare, that it becomes necessary to prohibit them by positive law, may not inaptly be classified with things which have an immoral tendency. The popular voice, as expressed in legislative enactments in many of the states, has pronounced the sale of intoxicating liquors on Sunday to be vicious in its effect. That the open, habitual, and persistent disregard of such laws, will encourage vice and immorality, is too plainly proven, by observation and experience, to be successfully controverted. Whether any given act will tend to demoralize the public, must be judged by the standard of morals which prevails to-day, not by that which measured the conduct of men two centuries ago. Therefore, the argument will be far from conclusive, that an act is not to be punished

as immoral in its tendency, because it was not proscribed during the reign of the second Charles.

The rule that a house is indictable where immoral practices are allowed, remains unchanged, but the sense of mankind, at the time when the legal principle is to be applied, must determine what state of facts shall make the citizen amenable to it. As to the form of the indictment, it need only be said that it was held to be sufficient in State v. Williams.

The judgment of the Supreme Court should, in my opinion, be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, KNAPP, SCUDDER, VAN SYCKEL, CLEMENT, DODD, GREEN—8.

*For reversal*—None.